IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RYAN K. ROZAK,

                     Plaintiff,

    v.

RANDALL R. HEPP, DYLON RADTKE,                    OPINION and ORDER
CHRIS KRUEGER, MARK SCHOMISCH,
B. MLODZIK, R. LYYSKI, MS. J. BOVEE, A. HOLT,          19-cv-417-jdp
M. GREENWOOD, HARPER, MICHAEL MEISNER,
LAURA BARTOW, EMILY DAVIDSON, and CHRIS
O'DONNELL,

                     Defendants.

---

Plaintiff Ryan K. Rozak, appearing pro se, is a prisoner at Fox Lake Correctional Institution. Rozak alleges that defendant prison officials repeatedly opened his legal mail out of his presence, blocked him from receiving some of that mail, and did so to retaliate against him for a previous lawsuit. I granted him leave on claims under the First Amendment to the United States Constitution against the staff who opened or tampered with his mail and those who knew about the problem but did nothing to stop it. Defendants have filed a motion for summary judgment, Dkt. 54, which I will grant in its entirety.

PRELIMINARY MATTERS

I begin with some preliminary motions.

Shortly after submitting their motion for summary judgment and supporting materials, defendants filed a motion to submit an amended declaration from defendant Bradley Mlodzik, who testified about changes to mail procedures at Fox Lake; his amendment clarifies a

paragraph explaining those changes. Dkt. 67. I will grant defendants' motion, but the changes are ultimately not material to my analysis of Rozak's claims.

Rozak has filed a document in which he objects to parts of defendants' answer. Dkt. 52. But Federal Rule of Civil Procedure 7(a) forbids a plaintiff from submitting a reply to an answer unless the court directs a reply to be filed. No such order has been made in this case, so I will not consider the reply. Rozak is not prejudiced by Rule 7(a) because averments in pleadings to which a response is not allowed are assumed to be denied. Fed. R. Civ. P. 8(b)(6).

In that same filing, Rozak asks for a bench trial rather than a jury trial. Dkt. 52. Also, defendants have filed a motion to stay the remainder of the schedule pending a decision on the motion for summary judgment. Dkt. 78. I will deny those motions as moot because I am granting summary judgment to defendants on all of Rozak's claims and dismissing the case.

## UNDISPUTED FACTS

Plaintiff Ryan Rozak is a prisoner at Fox Lake Correctional Institution. Rozak alleges that defendants Sergeant William Harper and Officer Anthony Holt repeatedly opened or authorized the opening of his legal mail out of his presence. Rozak alleges that defendant supervisors Warden Randall Hepp, Warden Michael Meisner, Deputy Warden Chris Krueger, Deputy Warden Dylon Radtke, Captain Bradley Mlodzik, Sergeant Roxanne Lyyski, and Security Director Mark Schomisch were made aware of the problem by correspondence with Rozak or by being copied on Rozak's affirmed grievances, but they did not take action to stop it. Rozak alleges that defendant grievance examiners Joanne Bovee, Matthew Greenwood, Laura Bartow, Emily Davidson, and Cindy O'Donnell dismissed his grievances and appeals regarding his legal mail without proper investigation.

The Fox Lake mailroom processes about 250 pieces of incoming mail a day. Incoming mail is taken to a warehouse and scanned by x-ray for contraband. The mail is then brought to the prison's mailroom. All "non-legal" mail is opened by machine and visually inspected for contraband, such as drugs or pornography. Staff might read a piece of mail only if there is reason to believe that it contains information about criminal activity or a risk to the safety and security of the institution, such as reference to gang activity. Department of Corrections policy defines "legal mail" as "correspondence to or from court and court staff, attorneys and established groups of attorneys involved in the representation of inmates in judicial proceedings. The destination or return address must clearly indicate that it is to or from one of these sources in order to be defined as legal mail." Dkt. 57-3, at 2. Legal mail should be opened to check for contraband only in the presence of the inmate to whom it is addressed. Defendants admit that although staff attempts to sort legal mail out from the mail being mechanically opened, legal mail is still occasionally opened by mistake out of the presence of the inmate.

Rozak provides little evidence to support his claims about his legal mail being opened. He does not provide the letters he says were opened, nor does he submit his own declaration explaining the events. He does submit declarations from three other inmates who say that they have had their own legal mail opened or have witnessed Rozak being handed legal mail that was opened out of his presence. Dkt. 70–72. These declarations lack factual detail necessary to support individual events discussed by Rozak in his complaint. But from these declarations and other evidence, it is undisputed that prison staff has opened letters from law firms out of the presence of inmates numerous times in the last several years.

The main source of evidence in the summary judgment record is the documentation of eight inmate grievances filed by Rozak between December 2016 and October 2020, in which he said that staff had opened mail sent to him by law firms. Most of the documentation was placed in the record by defendants, but in general I do not take Rozak to be disputing the events as recounted in the grievance documents. Rozak won most of these grievances, with examiners stating that opening the mail out of Rozak's presence violated DOC rules either because the correspondence was clearly from a law firm or it was marked on the outside as confidential legal mail. The grievance files contain the envelopes from the mailings but do not contain the letters themselves.

One of the incidents involves more than the alleged opening of legal mail out of Rozak's presence. I allowed Rozak to supplement his complaint with allegations about an October 2020 incident in which mail to Rozak from a law firm was opened by staff. Staff stated that the submission was only one page; Rozak believes that there were more documents in the envelope that he did not receive, both because the firm paid $8.25 in postage to send the correspondence and because someone from the law firm later told him that there were additional documents attached. In grievance proceedings, one of the hearing examiners theorized that the high postage cost was because the letter was sent by priority mail. Dkt. 32-8. At the summary judgment stage I will grant Rozak the inference that the mailing included more than one page and that he did not receive the full contents of the envelope.

At his deposition, Rozak stated that each of the letters was from a lawyer declining to represent him in any of his legal matters, and that none of the letters discussed legal strategies.

> Q Did any of those letters involve any attorneys who agreed to represent you?
>
> A No. They were all denials.

> . . . .
>
> Q Did any of the attorneys respond to your letters by discussing legal strategy with you?
>
> A No.

Dkt. 53, at 54, 55.

## ANALYSIS

### A.  First Amendment interference with legal mail

Rozak alleged that prison staff opened mail "from several Attorneys for appeal and civil matters" out of his presence and that letters from attorneys interested in representing him were opened and then thrown away. Dkt. 9, at 1–4. Prisoners have a First Amendment right to send and receive mail. *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989); *Procunier v. Martinez*, 416 U.S. 396, 413–14 (1974). But a right to receive mail does not necessarily include a right to receive mail *privately*. Generally, prison staff may open incoming mail to check it for contraband. *Kaufman v. McCaughtry*, 419 F.3d 678, 685 (7th Cir. 2005) (citing *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974); *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999)).

I granted Rozak leave to proceed under a First Amendment free speech theory regarding inspection or interference with his legal mail, because the court of appeals has—at least in some cases—considered legal mail privileged, to be opened only in the inmate's presence. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996) ("plaintiff's allegations that [legal] mail was opened, delayed, and stolen were "violations of free speech and association . . . sufficient to state claims."); *Castillo v. Cook Cnty. Mail Room Dep't*, 990 F.2d 304, 306–07 (7th Cir. 1993)

(reversing dismissal of case in which prisoner alleged that three pieces of mail from court had been opened).

In more recent decisions, courts have rejected this type of theory, instead stating that mail-interference claims should be grounded in an access-to-the-courts theory. *See, e.g.*, *Guajardo-Palma v. Martinson*, 622 F.3d 801, 802 (7th Cir. 2010) ("since the purpose of confidential communication with one's lawyer is to win a case rather than to enrich the marketplace of ideas, it seems more straightforward to base the concern with destroying that confidentiality on the right of access to the courts"); *Vasquez v. Raemisch*, 480 F. Supp. 2d 1120, 1138–41 (W.D. Wis. 2007) (prisoners do not have a freestanding right to be present when prison officials open mail, legal or otherwise). I denied Rozak leave to proceed on access-to-the-courts claims because Rozak did not allege that prison officials' actions hindered his litigation. Dkt. 12, at 2.

Now at summary judgment, I will dismiss his free speech claims. Even assuming that a prisoner may bring a First Amendment claim under a free speech theory unrelated to court access, Rozak fails to present facts showing that defendants opened or tampered with "legal mail" as that term has been defined by courts of this circuit. That definition is somewhat different from how "legal mail" is defined by DOC regulation.

Generally, "legal mail" is correspondence from a lawyer actually representing the prisoner, although courts have also suggested that legal mail could encompass correspondence between an inmate and a lawyer from whom the inmate seeks representation. *Antonelli*, 81 F.3d at 1432 (stating that "legal mail" is "privileged mail to or from an attorney"); *Kaufman*, 419 F.3d at 686 (prisoner failed to show that letters from law firms could be characterized as "legal mail" in part because prisoner "was neither represented nor seeking to be represented by an

6

attorney from any of the organizations with which he exchanged correspondence"). But the reason for privileging such mail "is that reading communications between a lawyer and his client chills the individual's ability to engage in protected speech." *Guajardo-Palma*, 622 F.3d at 802; *see also Vasquez*, 480 F. Supp. 2d at 1140 ("[I]f prison officials are free to open and inspect sensitive legal communications outside the watchful eye of the prisoner, the officials may read these materials with impunity, which could chill prisoners from exercising their right to free speech out of fear of retaliation or embarrassment.").

I inferred from Rozak's allegations that some of the opened correspondence was from lawyers representing Rozak on criminal or civil matters. But at summary judgment, Rozak does not produce any evidence showing that the mail at issue here was correspondence between Rozak and a retained attorney, or that there was any sensitive information about Rozak's claims or legal strategies in the opened mail. The various inmate grievances produced by the parties show that over the course of five years, staff opened several envelopes from lawyers to Rozak out of his presence. But by Rozak's own admission at his deposition, each of those letters was from a lawyer declining to represent him in any of his legal matters, and none of the letters discussed legal strategies. In his brief, Rozak provides no cases stating that attorney rejection letters should receive enhanced First Amendment protections, and my own research reveals no support for that proposition. Rozak relies heavily on the fact that his grievances were affirmed as evidence that his First Amendment rights were violated. But it is irrelevant to the First Amendment question whether DOC staff violated their own rules about opening mail. *Guajardo-Palma*, 622 F.3d at 806 ("[A] violation of state law is not a ground for a federal civil rights suit.").

7

Courts often observe that summary judgment requires the party with the burden of proof to "put up or shut up," pointing to evidence from which a reasonable jury could find in its favor of each element of its claim. *See, e.g., Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020). Rozak fails in his burden to provide any evidence about the opening of his legal mail that could support a First Amendment claim; he simply does not have a constitutional right to avoid prison staff opening the type of mail at issue in this case.

But even had I concluded that these letters from lawyers who declined to represent him were privileged "legal mail" under cases like *Antonelli* and *Castillo*, I would grant summary judgment to defendants under the doctrine of qualified immunity. That doctrine shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotation omitted). A clearly established right is one that is sufficiently clear such "that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). In other words, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Rozak can show that the violation was clearly established if "a violation of this right has been found in factually similar case, or that the violation was so clear that a government official would have known that his actions violated the plaintiff's rights even in the absence of a factually similar case." *Lee v. Young*, 533 F.3d 505, 512 (7th Cir. 2008). Law is "clearly established" only if it is found in Supreme Court precedent, controlling circuit authority, or "a consensus of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." *Wilson v. Layne*, 526 U.S. 603, 617 (1999). Rozak bears the burden

8

of demonstrating that his rights were clearly established to overcome qualified immunity. *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 473 (7th Cir. 2011).

Rozak did not address defendants' qualified immunity argument. In any event, my own research leads me to conclude that qualified immunity applies to his mail-opening claims. I've already discussed how the court of appeals has issued conflicting opinions about whether an inmate may bring a free speech claim about the opening of his legal mail or whether those claims belong under an access-to-the-courts theory. So it is not clearly established that defendants' conduct could support a claim under a free speech theory. And even under the contours of the free speech theory, I am aware of no cases factually similar enough to establish that correspondence from lawyers who decline to represent an inmate are entitled to privileged status under the First Amendment. I will grant summary judgment to defendants on Rozak's mail-opening claims.

The October 2020 incident requires further discussion because it goes beyond mere opening of Rozak's mail out of his presence; Rozak says that staff took most of the pages. But even assuming that staff indeed confiscated part of the contents of this mailing, that isolated incident isn't enough to support a First Amendment claim. *Ahlers v. Rabinowitz*, 684 F.3d 53, 64–65 (2d Cir. 2012) (eleven instances of delayed or withheld mail over four months did not state First Amendment claim); *Nixon v. Sec'y Penn. Dep't of Corr.*, 501 F. App'x 176, 178 (3d Cir. 2012) (destruction of single piece of mail insufficient to state First Amendment claim).

A claim about the monetary loss of an item would fall under the Due Process Clause of the Fourteenth Amendment rather than the First Amendment. Rozak didn't bring a due process claim about the loss of documents, but even if he had, that claim would fail because Rozak had postdeprivation remedies available to him. *See, e.g.*, *Tyler v. Wick*, No. 14-cv-68-jdp,

9

2016 WL 5496631, at *6 (W.D. Wis. Sept. 29, 2016) (discussing postdeprivation remedies such as Wisconsin causes of action for conversion of property), *aff'd*, 680 F. App'x 484 (7th Cir. 2017).

## B. Retaliation

I granted Rozak leave to proceed on a First Amendment retaliation claim against defendant Emily Davidson. Rozak alleges that Davidson failed to investigate and then dismissed his appeal of a grievance regarding the October 2020 mail-tampering incident because Rozak had filed a lawsuit against her. Dkt. 37 and Dkt. 42.

To prevail on a First Amendment retaliation claim, a plaintiff must show that: (1) he engaged in activity protected by the First Amendment; (2) the defendant took an action that would deter a person of "ordinary firmness" from engaging in the protected activity; and (3) the First Amendment activity was a motivating factor in the defendant's decision to take that action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). Rozak's lawsuit is protected speech under the First Amendment. But even assuming that the dismissal of his grievance appeal might dissuade a person of ordinary firmness from pursuing lawsuits in the future, Rozak doesn't show that his lawsuit was a motivating factor for Davidson recommendation dismissal of his grievance.

On October 23, 2020, I issued an order granting Rozak leave to proceed against numerous prison officials, including Davidson, in another of his lawsuits in this court. *See Rozak v. Chamberlin*, No. 20-cv-8-jdp, 2020 WL 9551288 (W.D. Wis.). Davidson recommended dismissing Rozak's grievance appeal two weeks later. *See* Dkt. 32-7. But suspicious timing alone is generally insufficient to establish a genuine issue of material fact for trial about a party's discriminatory or retaliatory motive. *See, e.g., Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 506–07

10

(7th Cir. 2004). There's nothing explicit in Davidson's recommendation suggesting that she acted the way she did because of his lawsuit. Rozak provides no other evidence, such as statements from Davidson, suggesting that she had a retaliatory motive. He says that Davidson's motive must have been retaliatory because she issued her recommendation quickly, a day after she received it, without further investigation. But he doesn't provide any evidence suggesting that it was unusual for corrections complaint examiners to resolve appeals so quickly or without further investigation. Even it was unusual, he doesn't explain why Davidson's reason for doing so was retaliation for his lawsuit. And Davidson says that she was not even aware of that lawsuit until a month later, when the Department of Justice emailed her notice. Rozak provides no evidence rebutting this. Because Rozak has not presented evidence that could lead a reasonable jury to conclude that Davidson recommended dismissal of his grievance because of the lawsuit against her, I will grant summary judgment to defendants on this claim.

Because I am granting summary judgment to defendants on all of Rozak's claims, the entire case will be dismissed.

ORDER

IT IS ORDERED that:

1. Defendants' motion for leave to file an amended declaration, Dkt. 67, is GRANTED.

2. Defendants' motion for summary judgment, Dkt. 54, is GRANTED.

3. Plaintiff Ryan K. Rozak's motion for a bench trial, Dkt. 52, is DENIED as moot.

4. Defendants' motion to stay the remainder of the schedule, Dkt. 78, is DENIED as moot.

5. The clerk of court is directed to enter judgment in favor of defendants and close the case.

Entered June 8, 2021.

                                      BY THE COURT:

                                      /s/

                                      _____
                                      JAMES D. PETERSON
                                      District Judge